The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
* * * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the employment relationship existed between the parties, and Gallagher Bassett Services, Incorporated was the carrier on the risk on 13 April 1992, which is the date of injury giving rise to this claim.
2. Plaintiff's average weekly wage was $367.00, which yields a compensation rate of $244.68.
3. The parties stipulated there pages of medical reports from Dr. Glenn Withrow and thirty-nine pages of reports from Dr. A.G. Bevin into evidence.
4. The issues for determination are:
 a. Whether plaintiff sustained a compensable injury to her forearms and wrists arising out of and in the course of her employment;
 b. Whether plaintiff's alleged disability is due to any occupational injury she alleges to have sustained on 3 April 1992; and
c. What, if any, are the compensable consequences?
5. The parties stipulated into the record defendants' responses to plaintiff's interrogatories and plaintiff's personnel file.
* * * * * * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On 2 February 1990 plaintiff began working with defendant-employer as a guest service representative and sales representative. On 5 February 1991 plaintiff was promoted to executive housekeeper, where her duties involved inspecting rooms, helping with laundry, filing reports, supervising and disciplining housekeeping employees, pulling linen, yard work, and stocking shelves. Defendant-employer's hotel consisted of one-hundred and twenty-two rooms.
2. In the course of inspecting guest rooms after they had been cleaned, plaintiff was required to open lock-set doors with her right hand. The room inspection took between three and fifteen minutes per room. Often, plaintiff had to perform this task more than one-hundred and twenty-two times per day because she was required to double check rooms that did not pass inspection the first time.
3. Beginning in November 1991, plaintiff noticed a loss of strength in her arms, and she began dropping items. As plaintiff's symptoms grew worse, she felt shooting pains as well as numbness in her hands. A lump developed on the inside of her right hand around January or February of 1992.
4. Plaintiff went to the doctor in April 1992, when her hands began staying numb all day. Plaintiff was examined by a physician's assistant at the Ram's Plaza Center on 13 April 1992 where her symptoms included the lump on her right wrist and numbness in her right hand. Ms. Debbie Waldes, PA-C, noted a diagnoses of (1 X 1 cm.) ganglion cyst right dorsal ulnar wrist, and carpel tunnel syndrome and recommended that plaintiff be referred to an orthopedist or hand specialist.
5. Ms. Waldes informed plaintiff that she must either have surgery or cease the activities which were causing her deteriorating condition. Because of her concern over the worsening condition of her hands and wrists, on 20 May 1992 plaintiff gave notice of her resignation to Mr. Craig Hicks, her manager, to be effective 4 June 1992. Plaintiff's last day working for defendant-employer was 5 June 1992. According to Mr. Hicks, at that time there were no positions available with defendant-employer in which the stress on plaintiff's hands and wrists could be relieved.
6. Plaintiff sought to schedule appointments with Dr. A.G. Bevin of the Hand Center in Chapel Hill, North Carolina for April and May of 1992, but the doctor's schedule was not accommodating. From 5 June 1992 through October of 1992, plaintiff was in Smyrna, Georgia attending to family matters. She did not seek any medical treatment during this time. Upon her return to North Carolina plaintiff again sought treatment with Dr. Bevin.
7. Upon his examination on 6 October 1992 Dr. Bevin diagnosed plaintiff's condition as tenosynovitis, and plaintiff began physical therapy through North Carolina Vocational Rehabilitation and received splints for her wrists. Dr. Bevin was informed by plaintiff of her duties with defendant-employer, including their repetitive nature. Further, Dr. Bevin rendered an opinion that plaintiff's tenosynovitis was caused by mechanical activity or repetitive motion trauma and that it developed over an extended period of time and not from a single event or traumatic episode. The Full Commission finds that the evidence of record establishes that plaintiff's tenosynovitis condition was caused by the repetitive nature of plaintiff's assigned work duties and is an occupational disease or illness.
8. According to Dr. Bevin, plaintiff will continue to have to wear splints for a protracted period of time. At this time there has been no rating assigned by Dr. Bevin regarding any permanency of the damage to plaintiff's hands and wrists.
9. Defendants have not offered plaintiff a job suitable to her capacity.
10. As the result of sustaining the occupational disease tenosynovitis plaintiff was only capable of earning wages of $17,500.00 per year. After ten months of unemployment, plaintiff obtained work on 19 April of 1993 as a receptionist at the University of North Carolina Counseling Center, where her salary was $17,500.00 per year.
11. Plaintiff's average weekly wage when she returned to work on 19 April 1993 was $336.53.
* * * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As the result of plaintiff's assigned work duties she sustained the occupational disease tenosynovitis. N.C.G.S. § 97-53 (21).
2. As the result her occupational disease tenosynovitis plaintiff is entitled to be paid temporary total disability compensation by defendants at the rate of $244.68 per week from 6 June 1992 through 18 April 1993. Such compensation shall be paid to plaintiff in a lump sum, subject to the attorneys' fee hereinafter approved. N.C.G.S § 97-29.
3. As the result of plaintiff's occupational disease, she is entitled to have paid by defendants all reasonable and necessary medical expenses arising as result of her occupational disease. N.C.G.S. § 97-25.
4. As the result of her occupational disease and defendants' failure to provide suitable employment plaintiff is entitled to be paid temporary partial disability compensation at a weekly rate of two-thirds the difference between her average weekly wage when her disability began and her capacity to earn an average weekly wage on 19 April 1993, or .667 x ($367.00 — $336.53)} $20.32 per week from 19 April 1993 and continuing thereafter for three-hundred (300) weeks from the date plaintiff's disability began on 6 June 1992. N.C.G.S. § 97-30.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $244.68 per week for the period 6 June 1992 through 18 April 1993, subject to he attorney's fee hereinafter provided.
2. Defendants shall pay to plaintiff temporary partial disability compensation at the rate of $20.32 per week from 19 April 1993 and continuing thereafter for three-hundred weeks from the date plaintiff's disability began on 6 June 1992, subject to the attorney's fee hereinafter provided.
3. Defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of her occupational disease, when bills for the same have been submitted pursuant to the approved Industrial Commission procedure.
4. An attorney's fee of twenty five (25) percent of the accrued compensation benefits due under the above award is approved for plaintiff's counsel, which shall be deducted from said award and paid directly thereto. Thereafter, counsel for plaintiff shall receive every fourth check payable to plaintiff pursuant to the above said award.
5. Defendants shall pay the costs.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ ________________________ DIANNE C. SELLERS COMMISSIONER